**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION**

| | | |
|---|---|---|
| **BRYANT L. FONTENOT,** | **)** | |
| | **)** | |
| **Plaintiff,** | **)** | |
| | **)** | |
| **v.** | **)** | **Case No. 1:25-cv-426-CWB** |
| | **)** | |
| **CITY OF OZARK,** | **)** | |
| **et al.,** | **)** | |
| | **)** | |
| **Defendants.** | **)** | |

**MEMORANDUM OPINION AND ORDER**

**I.    Introduction**

This action was removed from the Circuit Court of Dale County, Alabama and arises out of a dispute between Bryant L. Fontenot and various defendants associated with the City of Ozark. (*See* Doc. 1). John Mark Blankenship—the mayor of Ozark—has filed an Answer. (*See* Doc. 17). All other defendants—including the City of Ozark, the Ozark Police Department, and individual police officers—have moved for dismissal. (*See* Doc. 12). Upon careful review and consideration, the court concludes that a dismissal of those defendants should be granted.[1]

**II.    Factual Allegations and Procedural Background[2]**

Fontenot petitioned the Ozark City Council in September 2023 to have Mayor Blankenship censured in connection with the removal of certain books from the Ozark public library. (*Id*. at p. 5, ¶ 15). Mayor Blankenship thereafter disparaged Fontenot in a group text message and

---

[1] All parties previously consented to the exercise of dispositive jurisdiction by a Magistrate Judge pursuant to 28 U.S.C. § 636(c). (*See* Docket Entry on July 3, 2025).

[2] The "facts" stated herein are taken exclusively from the allegations in the Complaint and, for purposes of resolving the pending dismissal arguments, will be deemed true and construed most favorably to Fontenot.

at a subsequent meeting of the Ozark City Council. (*Id*. at ¶¶ 16-19). Following that meeting, Mayor Blankenship indeed was censured by council vote. (*Id*. at ¶ 20).

Just over two months later, Fontenot attended another council meeting on January 2, 2024. (*Id*. at p. 6, ¶ 21). Mayor Blankenship refused to speak with Fontenot after the meeting and threatened legal action. (*Id*. at ¶¶ 22-28). A meeting then was convened by Mayor Blankenship with the Ozark Police Chief (Charles Ward), the Ozark Police Deputy Chief (Michael Bryan), and an Ozark Police Officer (Marcus Agrella). (*Id*. at p. 7, ¶ 31). Mayor Blankenship expressed his desire to have Fontenot arrested but was informed that probable cause was lacking. (*Id*. at ¶¶ 32-33). Nonetheless, a warrant for Fontenot's arrest was issued the next day on a charge of misdemeanor harassment. (*Id*. at ¶ 34). Fontenot surrendered himself on January 4, 2026. (*Id*. at ¶ 35).

At trial, Officer Agrella acknowledged the lack of probable cause for Fontenot's arrest. (*Id*. at p. 8, ¶ 37). Officer Agrella further testified that all witness statements had been provided by Mayor Blankenship himself and that no further investigation was conducted. (*Id*. at ¶ 38). Fontenot's resulting motion for judgment of acquittal was granted, and the charge was dismissed. (*Id*. at ¶ 39). However, Mayor Blankenship has continued to disparage Fontenot since. (*Id*. at ¶ 40).

Fontenot filed suit to bring claims under 42 U.S.C. § 1983 and various state law theories. (*Id*. at pp. 6-18). Named as defendants were Mayor Blankenship, Chief Ward, Deputy Chief Bryan, Officer Agrella, the City of Ozark, and the Ozark Police Department. (*See* Doc. 1-1 at pp. 1-4). Proceedings were removed to federal court on June 11, 2025. (*See* Doc. 1). The pending motion followed shortly thereafter. (*See* Docs. 12, 13, 21, & 22).

### III.    Jurisdiction and Venue

Removal jurisdiction was predicated upon 28 U.S.C. §§ 1331 and 1343.  (*See* Doc. 1). Because Counts I through IV of the Complaint seek relief under 42 U.S.C. § 1983, subject matter jurisdiction is present over Fontenot's federal law claims.  Although Counts V through XIV arise under Alabama state law, the court finds that those claims are "so related to" the federal law claims as to form "part of the same case or controversy" and give rise to supplemental jurisdiction. *See* 28 U.S.C. § 1367(a).  No defendant has contested either personal jurisdiction or venue, and the allegations sufficiently support both. *See* 28 U.S.C. § 1391; Fed. R. Civ. P. 4(k)(1)(A).

### IV.    Legal Standard

To survive a motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim, a plaintiff must allege "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp., v. Twombly*, 550 U.S. 544, 570 (2007).  The guiding standard was explained in *Twombly* and refined in *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009):

> Two working principles underlie our decision in *Twombly*.  First, the tenet that a court must accept as true all the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.  Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.  Second, only a complaint that states a plausible claim for relief survives a motion to dismiss.  Determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief.

(citations and internal edits omitted).  In short, a plaintiff must "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545 (cleaned up).

3

The *Twombly-Iqbal* two-step analysis begins "by identifying the allegations in the complaint that are not entitled to the assumption of truth" because they are conclusory. *Id.* at 680; *Mamani v. Berzain*, 654 F. 3d 1148, 1153 (11th Cir. 2011) ("Following the Supreme Court's approach in *Iqbal*, we begin by identifying conclusory allegations in the Complaint."). After conclusory statements are set aside, the *Twombly-Iqbal* analysis requires the court to assume the veracity of well-pleaded factual allegations and determine whether they "possess enough heft to set forth 'a plausible entitlement to relief.'" *Mack v. City of High Springs*, 486 F. App'x 3, 6 (11th Cir. 2012) (citation omitted). Again, establishing facial plausibility requires more than stating facts that establish a mere possibility. *Mamani*, 654 F. 3d at 1156 ("The possibility that – *if* even a possibility has been alleged effectively – these defendants acted unlawfully is not enough for a plausible claim.") (emphasis in original). Plaintiffs instead are required to "allege more by way of factual content to nudge [their] claim[s] … across the line from conceivable to plausible." *Iqbal*, 556 U.S. at 683 (internal edits and citation omitted).

In ruling on a 12(b)(6) motion, a court generally may consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice. *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000). But "a court [also] may consider a document attached to a motion to dismiss ... if the attached document is (1) central to the plaintiff's claim and (2) undisputed. *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) ("'[U]ndisputed' means that the authenticity of the document is not challenged."). "[A] document need not be physically attached to a pleading to be incorporated by reference into it; if the document's contents are alleged in a complaint and no party questions those contents, [a court] may consider such a document provided it meets the centrality requirement[.]") (citation omitted); *see also* Fed. R. Civ. P. 10(c).

4

The court must accept all factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff.  *See Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008).  And the court "presume[s] that general allegations embrace those specific facts that are necessary to support the claim."  *Nat'l Org. for Women v. Scheidler*, 510 U.S. 249, 256 (1994) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)).  The court need not, however, accept as true any legal conclusions couched in the form of factual allegations. *See Diverse Power, Inc. v. City of LaGrange, Ga.*, 934 F.3d 1270, 1273 (11th Cir. 2019) (citing *Twombly*, 550 U.S. at 555).

## V.      Discussion

### A.      Fictitious Party Claims

"[The Federal Rules of Civil Procedure] apply to a civil action after it is removed from a state court."  Fed. R. Civ. P. 81(c)(1); *Joyner v. Wal-Mart Assocs., Inc*., No. 1:23-cv-542, 2024 WL 1748424, *1 (M.D. Ala. Apr. 23, 2024) ("Although this case was removed from state court, federal procedural rules apply, and a plaintiff must comply with federal pleading requirements.") (citations omitted).  Because Rule 10(a) requires that "the title of every complaint must name all the parties," federal courts "generally forbid[] fictitious-party pleading."  *Smith v. Comcast Corp.*, 786 F. App'x 935, 939 (11th Cir. 2019) ("[C]laims against fictitious or non-existent parties are usually dismissed.").  "[A] limited exception to this rule [applies] when the plaintiff's description of the defendant is so specific as to be 'at the very worst, surplusage.'"  *Richardson v. Johnson*, 598 F.3d 734, 738 (11th Cir. 2010) (quoting *Dean v. Barber*, 951 F.2d 1210, 1216 n.6 (11th Cir. 1992)).  And to come within that exception the plaintiff must provide a "description ... sufficiently clear to allow service of process on the [fictitious party]."  *Dean*, 951 F.2d at 1215-16 (citation omitted); *see also Daniel v. Howell*, No. 2:20-cv-145, 2020 WL 7029152, *2 (M.D. Ala.

Nov. 30, 2020) ("[L]abeling the fictitious Defendants as officers 1, 2, and 3, absent some other unambiguous description, lacks the necessary specificity to qualify under this limited exception.").

Here, the caption of the Complaint lists fictitious defendants "A through D" as "being those individuals and/or entities whose names and/or identities are presently unknown but who are liable for damages owed to Plaintiff" and fictitious defendants "E through H" as "being those Insurance companies whose names and/or identities are presently unknown but who are liable for damages owed to Plaintiff."  (Doc. 1-1 at p. 1).  Such descriptions are insufficient.  *See Johnson v. Town of Pinckard*, No. 1:23-cv-433, 2024 WL 1286193, *3 (M.D. Ala. Mar. 26, 2024) ("Johnson's description does not satisfy the Eleventh Circuit's requirement of providing a sufficient level of specificity, nor does it provide an adequate description to allow for service of process.").  Moreover, the body of the Complaint contains no additional information as to the fictitious defendants, and it does not include the fictitious defendants within its claims. *See Varney v. City of Ozark*, No. 1:23-cv-646, 2024 WL 3995308, *4 (M.D. Ala. Aug. 29, 2024) (dismissing claims against fictitiously identified defendants where the plaintiff "add[ed] nothing further in her complaint" and where "none of [her] claims refer[red] to actions taken by any fictitious parties").  Accordingly, all fictitious defendants are due to be dismissed.  *See Johnson*, 2024 WL 1286193 at *3 (dismissing fictitious defendants described only as "defendant[s] whose names are presently unknown to the Plaintiff and who are liable for damages owed to Plaintiff"); *Harris v. City of Ozark, Ala.*, No. 1:21-cv-553, 2022 WL 37017, *2 (M.D. Ala. Jan. 4, 2022) (dismissing fictitious defendants described only as "parties yet to be ascertained but who will be added as named defendants if and when discovered"); *Bozeman v. County of Elmore*, No. 2:20-cv-640, 2021 WL 2954004, *3 (M.D. Ala. July 14, 2021) (dismissing fictitious defendants described only as "those employees of Elmore County Jail who were on duty on

the occasion made the basis of this suit"). Although a dismissal has been requested with prejudice, and although such dismissals sometimes have been granted, the court concludes that the better course would be to dismiss <u>without</u> prejudice.[3]

**B.      Claims against the Ozark Police Department**

"[C]apacity to sue or be sued shall be determined by the law of the state in which the district court is held." *Dean*, 951 F.2d at 1214. "And it consistently has been held that police departments are not proper defendants under Alabama law." *Harrison v. Chambers Cnty. Police Dep't*, No. 3:24-cv-669, 2025 WL 1108568, *1 (M.D. Ala. Feb. 19, 2025) (citing *Ex parte Dixon*, 55 So. 3d 1171, 1172 n.1 (Ala. 2010)), *report and recommendation adopted*, 2025 WL 1107007 (M.D. Ala. Apr. 14, 2025); *see also McCants v. City of Mobile*, 752 F. App'x 744, 747 (11th Cir. 2018) (affirming dismissal of the Mobile Police Department "because it is not a proper legal entity that can be sued"); *Johnson*, 2024 WL 1286193 at *3 (dismissing claims against the Pinkard Police Department because "a police department lacks the capacity to be sued"); *Horton v. Martin*, No. 3:18-cv-758, 2018 WL 6323073, *1 (M.D. Ala. Dec. 4, 2018) (holding that claims asserted against the Lanett Police Department "fail because 'police departments are generally not considered legal entities subject to suit'") (citation omitted);

---

[3] *See Gordon v. United States*, No. 2:15-cv-758, 2016 WL 2600686, *2 (M.D. Ala. Mar. 31, 2016) ("Because fictitious party practice is not permitted in federal court, the Magistrate Judge … recommends dismissal without prejudice of these defendants, leaving the United States as the sole defendant."), *report and recommendation adopted*, 2016 WL 1984274 (M.D. Ala. May 3, 2016); *see also Barefield v. Dunn*, 688 F. Supp. 3d 1026, 1114 (M.D. Ala. 2023) ("Here, Barefield has not provided sufficient information to permit service upon the alleged fictitious defendants. Accordingly, all unknown Defendants will be dismissed without prejudice at this time."). Should Fontenot discover the identity of any fictitious defendant, he may submit a motion under Rule 15 of the Federal Rules of Civil Procedure asking for leave to amend. *See Saxton v. ACF Indus., Inc.*, 254 F.3d 959, 962-65 (11th Cir. 2001); *see also Todd v. City of LaFayette*, No. 3:12-cv-589, 2013 WL 1084296, *2 (M.D. Ala. Mar. 14, 2013).

*Johnson v. Andalusia Police Dep't*, 633 F. Supp. 2d 1289, 1301 (M.D. Ala. 2009) ("[C]laims against the Andalusia Police Department must fail because police departments are generally not considered legal entities subject to suit."); *Hawkins v. City of Greenville*, 101 F. Supp. 2d 1356, 1363 (M.D. Ala. 2000) (dismissing the Greenville Police Department as not being subject to suit). Accordingly, the Ozark Police Department is due to be dismissed with prejudice. *See Varney*, 2024 WL 3995308 at *3 ("Because the OPD is not a suable entity, the claims against it are due to be dismissed.").

### C.     Official Capacity Claims

"Official-capacity suits ... 'generally represent only another way of pleading an action against an entity of which an officer is an agent.'" *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (citation omitted); *see also Busby v City of Orlando*, 931 F.2d 764, 776 (11th Cir. 1991). ("Such suits against municipal officers are therefore, in actuality, suits directly against the city that the officer represents.") (internal quotation marks and citation omitted).  Thus, "[a] suit against a person in their official capacity is to be treated as a suit against the entity." *Faulkner v. Monroe Cnty. Sheriff's Dep't*, 523 F. App'x 696, 701 (11th Cir. 2013); *see also Christman v. Saint Lucie Cnty., Fla.*, 509 F. App'x 878, 879 (11th Cir. 2013) ("[A] claim against a defendant in his official capacity is the same as a claim against his employer.") (citing *McMillian v. Monroe Cnty. Ala.*, 520 U.S. 781, 785 n.2 (1997)).  Because Fontenot names the City of Ozark as a defendant, any official capacity claims against the other defendants are redundant and due to be dismissed with prejudice. *See Harris*, 2022 WL 37017 at *2 ("The City of Ozark has been named as a defendant; therefore, the redundant official capacity claims are due to be dismissed.") (citations omitted); *see also Johnson*, 2024 WL 1286193 at *3.

8

### D.    Punitive Damages against the City of Ozark

It is settled that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981); *see also* Ala. Code § 6-11-26 ("Punitive damages may not be awarded against the State of Alabama or any ... municipality thereof[.]"); *Mitchell v. Town of Hayneville, Ala.*, No. 2:20-cv-252, 2023 WL 1787739, *11 (M.D. Ala. Feb. 6, 2023) ("Punitive damages, however, are not available against the town itself."). Fontenot has expressly acknowledged as much.  (Doc. 21 at p. 3).  Accordingly, all claims for punitive damages against the City of Ozark should be dismissed with prejudice.

### E.    § 1983 Claims against the Individual Defendants

"Section 1983 ... creates a private right of action to vindicate violations of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012) (quoting 42 U.S.C. § 1983).  To prevail on a claim under § 1983, "a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also DeMarcus v. Univ. of S. Alabama*, 133 F.4th 1305, 1316 (11th Cir. 2025).  Fontenot alleges that Chief Ward, Deputy Chief Bryan, and Officer Agrella—as officials of the Ozark Police Department—all were acting under the color of state law when they violated his rights under the Fourth Amendment to the United States Constitution.[4]

---

[4]  The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" and that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation."  U.S. CONST. amend. IV. Fourth Amendment limitations/obligations extend to municipal police departments. *See Wolf v. Colorado*, 338 U.S. 25, 27-28 (1949); *see also Sylvester v. Fulton Cnty. Jail*, 94 F.4th 1324, 1329 (11th Cir. 2024) (citing *Kerr v. City of W. Palm Beach*, 875 F.2d 1546, 1548 n.4 (11th Cir. 1989)).

### i.    False Arrest

Count I purports to assert a Fourth Amendment claim under § 1983 for "Unlawful Arrest." (*See* Doc. 1-1 at p. 8).  It is alleged therein that Mayor Blankenship "provid[ed] false information to police officers and other authorities and executed a false and defamatory sworn deposition leading to the unlawful arrest and malicious prosecution of [Fontenot]."  (*Id*. at ¶ 42).  The only other defendant identified in Count I is Officer Agrella, who is alleged to have "executed the unlawful writ of arrest sworn to by [Mayor Blankenship] and unlawful[ly] arrested [Fontenot]" while "acting under the color of law, knowing that probable cause did not exist."  (*Id*. at p. 9, ¶ 43; *see also id*. at p. 4, ¶ 9:  "Defendant Marcus Agrella was the Ozark City Police Officer who arrested [Fontenot] on or about January 4, 2023.").

The problem with Count I is that a § 1983 claim for "false arrest" can only be brought in reference to a warrantless arrest.  *See Spinnenweber v. Williams*, 825 F. App'x 730, 733 (11th Cir. 2020) ("The fact that a state judge issued a warrant in this case thus extinguishes the Spinnenwebers' false arrest claim.  Any objection they have must necessarily be towards the legal process, rather than the *absence* of legal process.") (emphasis in original); *see also Williams v. Aguirre*, 965 F.3d 1147, 1158 (11th Cir. 2020) ("A claim of false arrest or imprisonment under the Fourth Amendment concerns seizures without legal process, such as warrantless arrests."). Considering that the alleged violation was committed pursuant to a warrant, the proper vehicle to assert a Fourth Amendment challenge would be a § 1983 claim for "malicious prosecution." *See Land v. Sheriff of Jackson Cnty., Fla*., 85 F.4th 1121, 1126 (11th Cir. 2023) ("[B]ecause Land challenges a seizure based on legal process—that is, a warrant-based arrest— the common law tort of malicious prosecution, not false arrest, guides our review."); *Williams*, 965 F.3d at 1158 ("Malicious prosecution, in contrast, requires a seizure 'pursuant to legal

process.'"); *Giles v. Manser*, 757 F. App'x 891, 895 (11th Cir. 2018) ("Because Giles was arrested pursuant to a warrant, his claim is properly one of malicious prosecution rather than false arrest."). Count I thus will be dismissed to the extent asserted against Officer Agrella.[5]

### ii.    Failure to Intervene

Count II purports to assert a § 1983 claim for "Failure to Prevent Unconstitutional Arrest Intentional Indifference." (*See* Doc. 1-1 at p. 9). The claim is asserted against Chief Ward, Deputy Chief Bryan, and Officer Agrella on the allegation that they "intentionally failed to intercede on behalf of [Fontenot] when [his] constitutional rights were being violated by [Mayor Blankenship]." (*Id*. at ¶ 46). Taken in context, the claim appears to relate to Fontenot's Fourth Amendment rights against unlawful arrest.

Neither Chief Ward nor Deputy Chief Bryan are alleged in the Complaint to have assisted Mayor Blankenship in obtaining the arrest warrant, to have possessed knowledge that an arrest warrant had been requested or issued, or to have been involved in execution of the arrest warrant. It thus cannot be said that they had any reasonable opportunity to intervene and prevent the arrest. Both Chief Ward and Deputy Chief Bryan should be dismissed from Count II on that basis alone. *See Brown v. City of Huntsville, Ala*., 608 F.3d 724, 737 (11th Cir. 2010) ("There was no active personal participation by Norris in Sonia's arrest, much less an opportunity to intervene in Hudson's arrest at the scene."); *see also Ford v. Smitherman*, 669 F. Supp. 3d 1173, 1183 (M.D. Ala. 2023) ("[T]o succeed on such a claim [for failure to intervene in a constitutional violation], the plaintiff must prove both (1) that a constitutional violation occurred; and (2) that the defendant officer was 'in a position to intervene' yet failed to do so.") (citing *Sebastian v.*

---

[5]  The court notes for clarity that Count I does not purport to assert a claim against Chief Ward or Deputy Chief Bryan.

*Ortiz*, 918 F.3d 1301, 1312 (11th Cir. 2019)). The same would be true as to Officer Agrella, <u>except</u> that Officer Agrella is alleged to have <u>executed the arrest warrant after it was issued</u>. (*Id*. at p. 4, ¶ 9; *id*. at p. 9, ¶ 43). So the question becomes whether the alleged facts are sufficient to state a plausible § 1983 claim against Officer Agrella for failing to intervene.

The Eleventh Circuit has had occasion to examine a similar scenario. *See Jones v. Cannon*, 174 F.3d 1271 (11th Cir. 1999). In *Jones*, a detective obtained an arrest warrant by including a false confession within his affidavit. *Id*. at 1278-79. A claim then was brought under § 1983 against a second involved detective for failing to intervene so as to stop the plaintiff's arrest and detention. *Id*. at 1286. Because it found "[t]here is no controlling authority clearly establishing that once a police officer knows another officer has fabricated a confession in a police report for a warrantless arrest, that police officer has a constitutional duty to intervene to stop the other officer's conduct," the court concluded that the plaintiff "has not shown [the second detective's] failing to intervene to stop [the first detective's] conduct violate[d] any clearly established right of which a reasonable police officer would have known." *Id*. The court held that the second detective "[a]t a minimum" would be entitled to protection via qualified immunity. *Id*. (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 807, 818 (1982)). And the Eleventh Circuit much more recently demonstrated that qualified immunity continues to apply in such a situation. *See Gallego v. Perez*, No. 21-13212, 2024 WL 2930451, *3-4 (11th Cir. June 11, 2024); *accord Stallworth v. Hurst*, No. 2:18-cv-1005, 2019 WL 5070196, *2 (M.D. Ala. Oct. 8, 2019) ("[T]o require that every officer on the street actively inquire as to the constitutional merits and predicate of each seizure by other officers, and then countermand seizures they believe are unreasonable … would effectively conscript every police officer to play the role of internal affairs as well as peacekeeper.").

12

The same rationale applies here.  Assuming Officer Agrella suspected—or knew—at the time he placed Fontenot under arrest that the arrest warrant was based upon a false statement from Mayor Blankenship, and further assuming that the Fourth Amendment might require him to have intervened, any such obligation was far from "clearly established."  Accordingly, Officer Agrella must be afforded the protection of qualified immunity.[6]

To the extent Fontenot also might be attempting to base a § 1983 claim upon a duty to intervene and stop his prosecution, the Eleventh Circuit has stated that "[an] officer is allowed to defer to the prosecutor, who has the power to determine whether to proceed with the prosecution … based on the evidence collected."  *Washington v. Howard*, 25 F.4th 891, 907 (11th Cir. 2022)

_____

[6] "'The doctrine of qualified immunity provides that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  *Miller v. Palm Beach Cnty. Sheriff's Off.*, 129 F.4th 1329, 1332 (11th Cir. 2025) (citation omitted); *see also Gallego*, 2024 WL 2930451 at *2 (cleaned up).  Arrest decisions unquestionably involve such discretionary authority. *See Wood v. Kesler*, 323 F.3d 872, 877 (11th Cir. 2003); *see also Nam Dang by & through Vina Dang v. Sheriff, Seminole Cnty., Fla.*, 871 F.3d 1272, 1279 (11th Cir. 2017) ("An official acts within his discretionary authority if his actions (1) were undertaken 'pursuant to the performance of his duties,' and (2) were 'within the scope of his authority.'") (citation omitted).  "To be clearly established, a right must be sufficiently clear 'that every reasonable official would [have understood] that what he is doing violates that right.'  In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'"  *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations and internal quotation marks omitted) (alteration in original).  "While the defense of qualified immunity is typically addressed at the summary judgment stage of a case, it may be ... raised and considered on a motion to dismiss."  *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002).  "To defeat a qualified immunity defense on a motion to dismiss, the operative complaint must plausibly plead that the defendant violated the plaintiff's federal rights and those rights were clearly established."  *Jackson v. City of Atlanta, Ga.*, 97 F.4th 1343, 1350 (11th Cir. 2024).  "Generally speaking, it is proper to grant a motion to dismiss on qualified immunity grounds when the 'complaint fails to allege the violation of a clearly established constitutional right.'"  *Corbitt v. Vickers*, 929 F.3d 1304, 1311 (11th Cir. 2019) (quoting *St. George*, 285 F.3d at 1337).  Qualified immunity for the same reasons would serve as a bar to any § 1983 failure to intervene claims and/or failure to stop claims as to Chief Ward and Deputy Chief Bryan had they been in position to act.  *See Alcocer v. Mills*, 906 F.3d 944, 951 (11th Cir. 2018) ("[E]ach defendant is entitled to an independent qualified-immunity analysis as it relates to his or her actions and omissions.").

13

(citations omitted); *see also Rebalko v. City of Coral Springs*, 552 F. Supp. 3d 1285, 1320 (S.D. Fla. 2020) ("[T]he Rebalkos have pointed the Court to no authority for their view that an officer can be liable for failing to intervene in a *prosecution*.") (emphasis in original).  Without a clearly established constitutional obligation, any such claims likewise would be barred by qualified immunity.

### iii.    Malicious Prosecution

Count III purports to assert a § 1983 claim for "Malicious Prosecution" against Mayor Blankenship, Chief Ward, Deputy Chief Bryan, and Officer Agrella.  (*See* Doc. 1-1 at p. 10, ¶ 49).  "To prove a Fourth Amendment malicious-prosecution claim … , a plaintiff must establish four elements:  (1) the plaintiff was seized under legal process; (2) the legal process justifying the plaintiff's seizure was constitutionally infirm; (3) the suit or proceeding terminated in the plaintiff's favor; and (4) the seizure would not otherwise be justified without legal process." *Gervin v. Florence*, 139 F.4th 1236, 1248 (11th Cir. 2025); *see also Chiaverini v. City of Napoleon, Ohio*, 602 U.S. 556, 558 (2024) ("To succeed on [a malicious prosecution] claim, a plaintiff must show that a government official charged him without probable cause, leading to an unreasonable seizure of his person.") (citing *Thompson v. Clark*, 596 U.S. 36, 43 & n. 2 (2022)).

The core allegation underpinning Count III is that the individual defendants "intentionally commenced the criminal prosecution against [Fontenot] for harassment and later failed to dismiss the same."  (Doc. 1-1 at p. 10, ¶ 49).  However, the only affirmative act taken to "commence" criminal proceedings is alleged against Mayor Blankenship. (*Id*. at p. 7, ¶ 35: alleging that Fontenot "was arrested and charged with the misdemeanor offense of harassment after [Mayor Blankenship] instituted a criminal prosecution maliciously and without probable cause"; *id.* at p. 10, ¶ 52: "[Mayor Blankenship] instituted the criminal proceedings …;" *see also id*. at pp. 12-13, ¶¶ 64, 67).

14

The search warrant itself confirms that Mayor Blankenship was the "Complainant." (Doc. 13-4 at p. 2; Doc. 1-1 at p. 8, ¶ 42: alleging that Mayor Blankenship "executed a false and defamatory sworn deposition leading to the unlawful arrest and malicious prosecution of [Fontenot]"; Doc. 13-3).  No facts are alleged in the Complaint or otherwise are apparent from the record suggesting that Chief Ward, Deputy Chief Bryan, or Officer Agrella had any involvement with the issuance of legal process or the initiation of criminal proceedings.  *See Laskar v. Hurd*, 972 F.3d 1278, 1297 (11th Cir. 2020) ("Laskar's complaint does not allege that either Allen or Garton made false statements to support the indictment.  Without alleging that Allen or Garton intentionally or recklessly made false statements to support the legal process justifying his seizure, Laskar's [malicious prosecution] claims against them fail.").

Although the Complaint does allege—albeit not in Count III—that Officer Agrella "kn[ew] that probable cause did not exist" yet still "executed the unlawful writ of arrest" (Doc. 1-1 at p. 9, ¶ 43), the fact remains that a neutral magistrate issued the warrant based upon an independent legal determination of probable cause. (Doc. 13-3).  Elsewhere in the Complaint it is alleged that Officer Agrella admitted at trial that the events of January 2, 2024 had been insufficient to establish probable cause (*id*. at p. 8, ¶ 37), but there is no allegation that Officer Agrella knew at the time Fontenot was arrested what evidence actually had been submitted to obtain the arrest warrant.  And the record reflects that the application included information beyond the January 2, 2024 events. (Doc. 13-3: "[Mayor Blankenship] has had at least 3 years of documents showing [Fontenot] harassing him.  See all attached documents.").  "[A]n officer ordinarily does not violate the Fourth Amendment when he executes a facially valid arrest warrant, regardless of whether the facts known to the officer support probable cause." *Williams*, 965 F.3d 1161 (citing *Whiteley v. Warden*, 401 U.S. 560, 568 (1971)).  Moreover, there is no allegation that Officer Agrella took any

action to further Fontenot's prosecution, and the Complaint suggests that Officer Agrella testified favorably at trial. (Doc. 1-1 at p. 8, ¶ 38). The Complaint similarly contains no allegation that either Chief Ward or Deputy Chief Bryan took any action whatsoever to facilitate Fontenot's arrest or prosecution. All of those defendants thus are due to be dismissed from the malicious prosecution claim. *See Washington*, 25 F.4th at 912 ("To succeed on a Fourth Amendment claim for a seizure pursuant to legal process in this context, a plaintiff must prove that the officer took an affirmative act to continue the prosecution because an officer has no duty to 'run after his [warrant].' ... Washington cannot prove that Howard took an affirmative act to continue her seizure, so she cannot prove that Howard 'violated [her] Fourth Amendment right.'") (internal citation omitted).

To the extent Chief Ward, Deputy Chief Bryan, and Officer Agrella are alleged to have conspired with Mayor Blankenship in connection with Fontenot's prosecution, that allegation is entirely conclusory without any factual basis as to their respective involvement or intent. (Doc. 1-1 at p. 10, ¶ 52: "[Mayor Blankenship] instituted the criminal proceedings by reasons of malice and conspiracy with [] Chief Ward, Deputy Chief Bryan, and Officer Agrella."). Nowhere does the Complaint set out any factual basis to plausibly suggest an agreement between Mayor Blankenship and any of the individual defendants as necessary to state a conspiracy claim. The allegations are to the contrary, *i.e.*, that those defendants informed Mayor Blankenship "that probable cause did <u>not</u> exist for an arrest of [Fontenot] in the manner than was requested." (Doc. 1-1 at p. 7, ¶ 33) (emphasis added).

A plaintiff asserting a § 1983 conspiracy claim must allege that "the defendants 'reached an understanding' to violate the plaintiff's constitutional rights." *Worthy v. City of Phenix City, Ala.*, 930 F.3d 1206, 1224 (11th Cir. 2019 (citation omitted). "Vague and conclusory allegations suggesting a § 1983 conspiracy are insufficient to withstand a motion to dismiss," and "[a] plaintiff

16

claiming a conspiracy under § 1983 must make particularized allegations that a conspiracy exists." *Hansel v. All Gone Towing Co.*, 132 F. App'x 308, 309 (11th Cir. 2005) (citations omitted). When, as here, a conspiracy claim fails to contain sufficient facts of the predicate agreement, it must be dismissed. *See Worthy*, 930 F.3d at 1224 ("Appellants did not plead facts showing that Phenix City and Redflex reached an understanding to violate their constitutional rights. ... Accordingly, Appellants fail to state a conspiracy claim."); *Foster v. Guillou*, No. 22-13116, 2023 WL 7126425, *3 (11th Cir. Oct. 30, 2023) ("Foster's conspiracy claim fails because his complaint broadly asserts only conclusory allegations of a conspiracy and lacks specific factual allegation."); *Ghee v. Comcast Cable Commc'ns, LLC*, No. 22-12867, 2023 WL 3813503, *2 (11th Cir. June 5, 2023) (affirming dismissal of claim because "Ghee's complaint lacks any particularized factual allegations of a conspiracy to violate his constitutional rights"); *Lawrence v. Thornburg Mortg. Home Loans Inc.*, 624 F. App'x 721, 722 (11th Cir. 2015) ("Lawrence's conclusory allegations that 'defendants collectively and individually participated in a conspiracy to retaliate' and 'to commit fraud, misrepresentation and to violate well established laws' were insufficient to withstand the motion by Cenlar Bank to dismiss.").

Count III therefore should be dismissed as to Chief Ward, Deputy Chief Bryan, and Officer Agrella.

### F.    § 1983 Claims against the City of Ozark

In Count IV, Fontenot seeks to impose "Municipal Liability" against the City of Ozark for the alleged Fourth Amendment violations. (*See* Doc. 1-1 at p. 11). Such liability is based upon allegations (1) that "[Mayor Blankenship] and Chief Ward had final policymaking authority over the City of Ozark writ process" and (2) that the "actions and conduct by [Mayor Blankenship] were pursuant to a long-standing custom and policy of the City of Ozark." (*Id.* at ¶¶ 56-57).

17

Because a municipality cannot be held vicariously liable under § 1983, one of those approaches would be necessary to establish the City of Ozark itself as the moving force behind the alleged constitutional violations. *See Canton v. Harris*, 489 U.S. 378, 385 (1989) ("[A] municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue. *Respondeat superior* or vicarious liability will not attach under § 1983.") (citing *Monell v. Dept' of Social Servs.*, 436 U.S. 658, 694-95 (1978)); *see also Graham*, 473 U.S. at 166 ("[A] governmental entity is liable under 1983 only when the entity itself is a 'moving force' behind the deprivation.") (cleaned up).

Starting with the second theory first, "'[a] policy is a decision that is officially adopted by the municipality, or created by an official of such rank that he or she could be said to be acting on behalf of the municipality.'" *Christmas v. Harris Cnty., Ga.*, 51 F.4th 1348, 1356 (11th Cir. 2022) (citation omitted). And "[a] custom is an unwritten practice that is applied consistently enough to have the same effect as a policy with the force of law." *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1332 (11th Cir. 2007). "Demonstrating a policy or custom requires 'showing a persistent and wide-spread practice.'" *Id*. (citation omitted) (cleaned up). "Normally random acts or isolated incidents are insufficient … ." *Depew v. City of St. Mary's, Ga.*, 787 F.2d 1496, 1499 (11th Cir. 1986); *see also City of Okla. City v. Tuttle*, 471 U.S. 808, 823-24 (1985) ("Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker.").

Fontenot alleges that the individual defendants, "exercising their position of authority and acting under color of state law in their capacity of public officials and representatives of the City of Ozark and the Ozark Police Department, separately and in concert subjected [him]

to unlawful arrest and malicious prosecution." (Doc. 1-1 at p. 11, ¶¶ 57). However, there is no factual predicate that anyone involved in the underlying events took any action pursuant to an official governmental policy to conduct arrests or pursue prosecutions without probable cause. No particular policy is cited in the Complaint, and the only example of a violation offered by Fontenot is his own. Even assuming that probable cause was lacking in Fontenot's case, it is well settled that an isolated incident is insufficient to impose *Monell* municipal liability. *See, e.g., Landau v. City of Daytona Beach*, No. 21-12947, 2023 WL 6622208, *17 (11th Cir. Oct. 11, 2023) ("[W]e have consistently rejected, with limited exception, evidence of a single incidence of unconstitutional activity as sufficient to impose liability under *Monell*.") (collecting cases); *see also Roy v. Ivy*, 53 F.4th 1338, 1347 (11th Cir. 2022) ("Proof of a single incident of an unconstitutional activity is insufficient to show a custom, which must be such 'a longstanding and widespread practice that it is deemed authorized by the policymaking officials because they must have known about it but failed to stop it.'") (citation omitted); *Watkins v. Dubreuil*, 820 F. App'x 940, 945-46 (11th Cir. 2020) ("Watkins has not identified any policy or custom of the jail or the Sheriff's Office that caused his injury. … Nor can we infer such a custom or policy 'based upon an isolated incident,' which is all that we have here. ... Accordingly, the complaint failed to allege any basis for municipal liability.") (internal citations omitted); *Gurrera v. Palm Beach Cnty. Sheriff's Off.*, 657 F. App'x 886, 893 (11th Cir. 2016) ("Plaintiff fails to identify any examples beyond his own arrest of widespread unconstitutional conduct. … Accordingly, Plaintiff's § 1983 claims against the Sheriff's Office fail to state a claim under *Monell*.") (internal citation omitted); *Grider v. Cook*, 522 F. App'x 544, 547-48 (11th Cir. 2013) ("Grider provided a formulaic recitation of a claim under [*Monell*] by stating that 'defendants' conduct was the product of an official policy or unofficial custom,' but he did not provide any specific facts about any

19

policy or custom that resulted in his alleged constitutional deprivation. … Accordingly, we affirm the district court's dismissal of Grider's complaint for failure to state a claim.").

With respect to Fontenot's alternate theory, it is true that "[a] municipality may be held liable for a single act or decision of a municipal official with final policymaking authority in the area of the act or decision." *McMillian v. Johnson*, 88 F.3d 1573, 1577 (11th Cir. 1996); *see also Cuesta v. Sch. Bd. of Miami-Dade Cnty., Fla*, 285 F.3d 962, 968 (11th Cir. 2002). The ultimate issue here is whether Mayor Blankenship, Chief Ward, or Deputy Chief Bryan were "policymakers for the City of Ozark." (Doc. 1-1 at p. 12, ¶ 58). "To determine if someone is a final policy maker, [courts] look not only to 'state and local positive law,' but also 'custom and usage having the force of law.'" *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1292 (11th Cir. 2004) (quoting *McMillian*, 88 F.3d at 1577).

Fontenot offers no support for the bare allegation that Mayor Blankenship, Chief Ward, or Deputy Chief Bryan had final policymaking authority. It is well established that to satisfy the pleading standards under the Federal Rules of Civil Procedure, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678-79. A complaint thus does not pass muster if it merely "offers labels and conclusions or a formulaic recitation of the elements of a cause of action" or if it "tenders naked assertion[s] devoid of further factual enhancement." *Id.* (internal quotation marks omitted) (quoting *Twombly*, 550 U.S. at 555 & 557). Put more simply, Fontenot is required to "allege more by way of factual content to nudge [his] claim … across the line from conceivable to plausible," *Iqbal*, 556 U.S. at 683 (internal edits and citation omitted), and must provide "fair notice of what the ... claim is and the grounds upon which it rests," *Twombly*, 550 U.S. at 555 (citation omitted).

20

Because Fontenot has not alleged any facts showing that a "policy" or "custom" was the "moving force" behind any violation of his constitutional rights, nor proffered any facts showing that Mayor Blankenship, Chief Ward, or Deputy Chief Bryan are "final policymaking authorities" in the area of arrests/prosecutions,[7] a plausible claim for municipal liability has not been stated. *See Higdon v. Tusan*, 746 F. App'x 805, 815 (11th Cir. 2018) ("However, the local county has no control over the courts or court personnel. *See* Ga. Const. art. IX, § 2, ¶ I(c)(7). As a result, Fulton County does not have final policymaking authority over the courts and cannot be subject to § 1983 liability in relation to the courts' actions. … Accordingly, we affirm the district court's dismissal of the remaining counts found in Section VI on this basis.") (internal citation omitted); *Summers v. City of Dothan, Ala.*, 757 F. Supp. 2d 1184, 1199 (M.D. Ala. 2010) ("Summers's Complaint and Response include allegations of mistreatment by other police officers, by dispatchers, and by superiors such as Captain Draughon and Chief Powell. However, she has offered no evidence or argument regarding the policymaking authority of these persons within the particular area that their actions were undertaken."). Accordingly, Count IV is due to be dismissed.[8]

---

[7] It appears from the Ozark Code of Ordinances that final policymaking authority over the issuance of arrest warrants lies with the municipal judge. *See* Ozark Code of Ordinances at § 6.7 ("The municipal judge is authorized to issue arrest and search warrants upon affidavit … ."). The municipal judge additionally is authorized to appoint a magistrate to assist in the "[i]ssuance of arrest warrants." *See id*. at § 6.10. No such authority appears vested in the mayor. *See id*. at § 6.9. The court may take judicial notice of the publicly available ordinances because they are central to Fontenot's claims and not subject to reasonable dispute. *See* Fed. R. Evid. 201(b); *see also Baker v. JEA*, No. 22-11335, 2023 WL 5528717, *1 (11th Cir. Aug. 28, 2023) ("We take judicial notice of the Charter and ordinances of the City of Jacksonville as they are "not subject to reasonable dispute.").

[8] There is no indication in Count IV that Fontenot seeks to predicate municipal liability under *Monell* upon a failure to adequately train. *Watkins v. Session*, No. 22-14070, 2023 WL 8469704, *4 (11th Cir. Dec. 7, 2023); *see also Lewis v. City of West Palm Beach, Fla.*, 561 F.3d 1288, 1293 (11th Cir. 2009).

### E.    State law claims[9]

### i.    False Imprisonment

Count V is entitled "False Imprisonment."  (Doc. 1-1 at p. 12).  The only substantive allegation contained therein is as follows:

> 61.    On or about the 3rd day of January 2024, [Mayor Blankenship] within the City of Ozark, Alabama, did unlawfully cause [Fontenot] to be arrested and imprisoned against [his] will.

(*Id.* at ¶ 61).  No allegations are made against Chief Ward, Deputy Chief Bryan, or Officer Agrella. As stated earlier, neither Chief Ward nor Deputy Chief Bryan is alleged to have had any personal involvement in Fontenot's arrest, and Officer Agrella's involvement is alleged to have been limited to acting in response to an arrest warrant issued by a magistrate.  Accordingly, Count V is due to be dismissed to the extent it might be seeking relief against those defendants.  Moreover, like in the § 1983 context, Alabama law precludes a false arrest claim when—as here—an arrest is made pursuant to a warrant.  *See Ennis v. Beason*, 537 So. 2d 17, 19 (Ala. 1988) ("Because the arrest of Mrs. Ennis was made pursuant to a warrant issued by a 'lawfully authorized' person, i.e., a circuit judge, the directed verdict was properly granted.").  In that circumstance, as with a § 1983 claim, the recourse is through a claim for malicious prosecution.  *Id.*; *see also Harris*, 2022 WL 37017 at *7 (M.D. Ala. Jan. 4, 2022) ("Harris' argument that Culbreath did not have arguable probable cause to seek a warrant, however, is an argument which is relevant to a federal malicious prosecution claim, but does not, under Alabama law, support a false imprisonment claim.") (citing *Ennis*, 537 So. 2d at 19).

---

[9]   Although it is not specifically stated in the Complaint, the court presumes from context that Counts V through XIV are asserted exclusively under Alabama state law.  (Doc. 1-1 at pp. 12 through 17).

### ii.    Abuse of Process

Count VI is entitled "Abuse of Process."  (Doc. 1-1 at p. 12).  Again, the only factual allegations pertain to Mayor Blankenship:

> 64     On or about the 3rd day of January 2024, [Mayor Blankenship] maliciously obtained the issuance of the writ of process for a warrant of arrest, from the Municipal Court of Ozark, Alabama in case number MC-2004-0000009 and had it served on [Fontenot].

> 65.     [Mayor Blankenship] abused the said writ or process in that no probable cause existed for the writ of arrest of [Fontenot]; [Mayor Blankenship] used his position as mayor to influence, control, and force the Ozark City Magistrates Office to issue an unwarranted writ of arrest for [Fontenot]; a writ that would have never been issued but for [Defendant Blankenship's] wrongful actions.

(*Id*. at pp. 12-13, ¶¶ 64-65).  Because Count VI contains no factual allegations of wrongdoing against Chief Ward, Deputy Chief Bryan, or Officer Agrella, those defendants are due to be dismissed.  Dismissal of those defendants additionally would be proper because the Complaint otherwise lacks averments that any of them acted with an "ulterior purpose" or with "malice" as necessary to state a plausible claim for abuse of process.  *See Willis v. Parker*, 814 So. 2d 857, 865 (Ala. 2001) ("To establish a claim of abuse of process, Parker must prove: "1) the existence of an ulterior purpose; 2) a wrongful use of process, and 3) malice.") (quoting *C.C. & J., Inc. v. Hagood*, 711 So. 2d 947, 950 (Ala.1998)).

### iii.    Malicious Prosecution

Count VII is entitled "Malicious Prosecution" (Doc. 1-1 at p. 13) and is predicated upon the allegation that "[Mayor Blankenship], maliciously and without probable cause, obtained the issuance of a warrant for the arrest of [Fontenot] on a charge of harassment." (*Id*. at ¶ 67).  Nothing is said therein about the other defendants so as to plausibly state a claim against them, and it already has been observed that the Complaint makes no allegations elsewhere that Chief Ward, Deputy Chief Bryan, and/or Officer Agrella did anything to initiate or perpetuate the proceedings

23

against Fontenot. *See Heining v. Abernathy*, 295 So. 3d 1032, 1040 (Ala. 2019) ("It is a complete defense to a malicious prosecution action that the defendant was not the determining factor in the decision to prosecute.") (citation omitted). Accordingly, Count VI cannot proceed as to those defendants.

### iv.    Slander Per Se

Count VIII is entitled "Slander Per Se" and, once again, contains allegations directed exclusively at Mayor Blankenship. (Doc. 1-1 at p. 14; *id*. at ¶ 79: "[Mayor Blankenship] made false and defamatory statements about [Fontenot]"; *id*. at ¶ 80: "As a proximate result of [Mayor Blankenship's] actions, [Fontenot] was caused to suffer … ."). Without similar allegations against Chief Ward, Deputy Chief Bryan, or Officer Agrella, it cannot be said that a plausible claim for slander has been asserted against them.

### iv.    Libel

Count IX is entitled "Libel" and likewise is based upon alleged defamatory statements by Mayor Blankenship—this time in writing:

> 82.    [Mayor Blankenship] maliciously provided false information about [Fontenot] to the Ozark City Counsel, the Dale County Commission, and others in his October 2, 2023 letter; written on official city letterhead and signed by [Mayor Blankenship] in his official capacity as Ozark Mayor.
>
> 83.    [Mayor Blankenship] provided false information about [Fontenot] to police officers and others in a sworn affidavit that became part of a public record.
>
> 84.    As a proximate result of [Mayor Blankenship's] actions, [Fontenot] was caused to suffer … ."

(Doc. 1-1 at p. 15, ¶¶ 82-84). Count IX does not purport to set out a claim against Chief Ward, Deputy Chief Bryan, or Officer Agrella.

### v.   Intentional Infliction of Emotional Distress

Count X is entitled "Intentional Infliction of Emotional Distress" and appears to target all defendants.  (Doc. 1-1 at p. 15).  However, the tort of intentional infliction of emotional distress—often referred to as the "tort of outrage"—is highly restricted.  *See 21st Mortg. Corp. v. Robinson*, __ So. 3d __, No. SC-2023-0304, 2024 WL 5179041, *8 (Ala. Dec. 20, 2024) ("[W]e reiterate that the tort of outrage is an extremely limited cause of action and will lie in circumstances demonstrating only the most egregious conduct.") (emphasis in original).  Count X contains no allegations of conduct upon which the claim is based.  Even assuming logically that the claim arises from Fontenot's arrest and prosecution, the Complaint makes no related allegations against Chief Ward or Deputy Chief Bryan beyond their alleged statements to Mayor Blankenship that probable cause was lacking with respect to the events of January 2, 2024.  The only additional allegation as to Officer Agrella is that he personally executed the arrest warrant when Fontenot surrendered himself on January 4, 2024.  None of the alleged conduct reasonably could be deemed "reckless" or "extreme and outrageous" as necessary to support a claim on the asserted theory. *See Deaton v. S. Highland Child Dev. Ctr., Inc.*, 405 So. 3d 244, 255 (Ala. 2024) ("[T]o recover for [intentional infliction of emotional distress], the plaintiff must establish that "[the conduct] (1) was intentional or reckless; (2) was extreme and outrageous; and (3) caused emotional distress so severe that no reasonable person could be expected to endure it.") (citation omitted); *Robinson*, 2024 WL 5179041 at *8-9.

### vi.   Invasion of Privacy

Count XI is entitled "Invasion of Privacy."  (Doc. 1-1 at p. 16).  But its allegations are collective and conclusory as to all defendants.  (*Id*. at ¶ 91: "The Defendants' conduct, as foresaid, was an invasion of [Fontenot's] privacy … .").  Even looking at the Complaint in its entirety,

nothing alleged against Chief Ward, Deputy Chief Bryan, or Officer Agrella would support a plausible claim for any species of an invasion of privacy claim. *See Griggs v. NHS Mgmt., LLC*, 419 So. 3d 12, 21 (Ala. 2024) ("[I]nvasion of privacy consists of four limited and distinct wrongs: (1) intruding into the plaintiff's physical solitude or seclusion; (2) giving publicity to private information about the plaintiff that violates ordinary decency; (3) putting the plaintiff in a false, but not necessarily defamatory, position in the public eye; or (4) appropriating some element of the plaintiff's personality for a commercial use.") (citation omitted).  Nor would any allegations against those defendants support the element of intent required.  *See id*. ("This Court defines the tort of invasion of privacy as the intentional wrongful intrusion into one's private activities in such a manner as to outrage or cause mental suffering, shame, or humiliation to a person of ordinary sensibilities.") (citation omitted).  Chief Ward, Deputy Chief Bryan, and Officer Agrella therefore are due to be dismissed from Count XI.

### vii.    Harassment

Count XII is entitled "Harassment" and asserts that "[Mayor Blankenship's] above described actions constitute harassment."  (Doc. 1-1 at p. 16, ¶ 93).  Count XII does not reference Chief Ward, Deputy Chief Bryan, or Officer Agrella and does not purport to state a claim against them.

### viii.    Outrage

Count XIII is entitled "Outrage" and, like Count X, seeks to recover damages for emotional distress.  (Doc. 1-1 at p. 17; *id*. at ¶ 98: "The emotional distress that Defendants caused [Fontenot] to suffer was so severe that no reasonable person could be expected to endure it.").  Because the tort of "outrage" is one and the same with the tort of "intentional infliction of emotional distress," Count XIII is due to be dismissed as duplicative of Count X.  *See Ex parte Roberts*, __ So. 3d __,

26

No. SC-2024-0804, 2025 WL 1776254, *5 n.2 (Ala. June 27, 2025) ("Intentional infliction of emotional distress "is often referred to in our cases as a tort-of-outrage claim.") (citations omitted).

### ix.    **Respondeat Superior**

Count XIV is entitled "Respondeat Superior." (Doc. 1-1 at p. 17). Although Alabama law does permit tort liability in certain circumstances to be imposed vicariously through that doctrine, the analysis must be conducted as part of the underlying tort claim(s) and not via a freestanding count. Stated differently, there is no such independent cause of action recognized in Alabama. *See, e.g., Ex parte City of Birmingham*, No. SC-2024-0700, 2025 WL 2680098, *2 n.1 (Ala. Sept. 19, 2025) (explaining that "the doctrine of 'respondeat superior' is a theory of liability, not a legal claim") (citations omitted). More importantly, respondeat superior can only be used to impose liability vicariously upon a principal when there has been commission of an underlying tort. *Stovall v. Hancock Bank of Alabama, Inc.*, No. 2:12-CV-1036-MEF, 2013 WL 3357851, *6 (M.D. Ala. July 3, 2013) ("[T]the law is well-settled that a defendant cannot be held vicariously liable for a tort when the plaintiff cannot establish underlying liability for that tort."). Because the Complaint does not state a plausible tort claim against Chief Ward, Deputy Chief Bryan, or Officer Agrella, no respondeat superior liability could be imposed against the City of Ozark based upon their conduct. To the extent respondeat superior liability might be sought for the alleged conduct of Mayor Blankenship, the court observes that all of the claims against Mayor Blankenship involve allegations of conduct undertaken intentionally and/or maliciously. Even accepting such allegations as true, Fontenot could not hold the City of Ozark liable—as municipalities in Alabama enjoy immunity against employees' intentional misconduct. *See* Ala. Code § 11-47-190 (limiting vicarious liability of a municipality to acts that are committed "through neglect, carelessness, or unskillfulness"); *see also Fowler v. Meeks*, 569 F. App'x 705, 708 (11th Cir. 2014) ("[B]ecause

the facts show intentional conduct, the City is entitled to immunity under § 11-47-190."). The City of Ozark thus should be dismissed as to all state law claims.

Finally, Count XIV appears to reflect an attempt to impose vicarious liability not only against the City of Ozark but also against Chief Ward and Deputy Chief Bryan on the allegation that they "supervised [and] trained Officer Agrella, employees of the magistrate's office and other Ozark City Officials and at all times were responsible for and had control over said Ozark City officials and employees." (Doc. 1-1 at p. 18, ¶ 100). Not only would such an attempt fail in the absence of a plausible claim against Officer Agrella, Alabama law is clear that supervisory employees cannot be held vicariously liable for the conduct of their subordinates via a theory of respondeat superior. *See Ware v. Timmons*, 954 So. 2d 545, 555 (Ala. 2006), *as modified on denial of rehearing* (Sept. 22, 2006) ("[A]s a matter of law, the doctrine of respondeat superior does not hold supervisors, as co-employees, vicariously liable for the torts of their subordinates.").[10]

## VI.    Conclusion

For the reasons set forth above, it is **ORDERED** that the pending motion to dismiss (Doc. 12) is hereby **GRANTED** as follows:

- all fictitiously named defendants are dismissed without prejudice;

- the Ozark Police Department is dismissed with prejudice;

- all claims against Mayor Blankenship, Chief Ward, Deputy Chief Bryan, and Officer Agrella in an official capacity are dismissed with prejudice;

- all claims against Chief Ward, Deputy Chief Bryan, and Officer Agrella in an individual capacity are dismissed with prejudice; and

---

[10]  The moving defendants construe Count XIV as a claim for negligent supervision and training. (*See* Doc. 13 at p. 56). Given the title used by Fontenot and the allegations of "responsb[ility]" and "control," combined with the absence of allegations sufficient to state a claim for supervision/ training, the court will take Fontenot at his word and address Count XIV only as pertaining to respondeat superior liability.

- all claims against the City of Ozark are dismissed with prejudice.

It is further **ORDERED** that Counts I and V for false arrest/imprisonment are dismissed *sua sponte* against Mayor Blankenship because the proper claim would be for malicious prosecution as separately asserted in Counts III and VII.  Accordingly, <u>this action now shall proceed solely against Mayor Blankenship on Count III and Counts VI through XIII</u>.

Notwithstanding the foregoing, it is recognized that the Federal Rules of Civil Procedure contemplate a liberal policy of amendment, *see* Fed. R. Civ. P. 15(a)(2), and that represented plaintiffs generally must be afforded an opportunity to amend—if requested—prior to a dismissal with prejudice, *see Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991), *overruled in part by Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 & n. 1 (11th Cir. 2002) (en banc) (holding that a district court is not required to *sua sponte* grant a represented plaintiff leave to amend absent a motion or request).  In keeping with that authority, but limited by the ethical obligations imposed under Rule 11(b) and the pleading standards imposed under Rule 8(a), Fontenot shall be permitted to request reconsideration of the dismissal of any dismissed claim by submitting a motion for leave to amend that complies with Local Rule 15.1, *i.e.*, it must contain a copy of a proposed amendment curing those deficiencies that gave rise to dismissal. *See also Cita Tr. Co. AG v. Fifth Third Bank*, 879 F.3d 1151, 1157 (11th Cir. 2018) (explaining that a request to amend must be made by motion, is not properly raised by being "imbedded within an opposition memorandum," and "should either set forth the substance of the proposed amendment or attach a copy of the proposed amendment") (citations omitted).  The court notes, however, that leave to amend may be denied if the amendment would be futile.  *See Cockrell v. Sparks*, 510 F.3d 1307, 1310 (11th Cir. 2007) ("Leave to amend a complaint is futile when the complaint as amended would still be properly dismissed or be immediately subject to

29

summary judgment for the defendant.") (citation omitted).   Any such motion must be filed within 30 days from the date hereof absent extraordinary circumstances establishing good cause for further delay.[11]

        **DONE** this the 31st day of March 2026.

                                                     **CHAD W. BRYAN**
                                                   **UNITED STATES MAGISTRATE JUDGE**

---

[11]  Fontenot additionally should be mindful to eliminate all "shotgun pleading" characteristics as summarized in *Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1320 (11th Cir. 2015)—particularly as to his practice of adopting all preceding counts and failing to specify among the various defendants.   "Shotgun pleadings 'are flatly forbidden by the spirit, if not the letter, of [the procedural] rules,'" which are designed to enable courts to determine "which facts support which claims" and "whether the plaintiff has stated any claims upon which relief can be granted." *Barmapov v. Amuial*, 986 F.3d 1321, 1324 (11th Cir. 2021) (quoting *Weiland*, 792 F.3d at 1320).